UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 06-876 PA |
|---|---|
| Plaintiff, | COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW RE DEFENDANT'S MOTION TO DISMISS INDICTMENT FOR POST-INDICTMENT DELAY |
| v. | |
| ARNULFO ARAIZA, | |
| Defendant. | |

This matter is before the Court on Defendant Arnulfo Araiza's Motion to Dismiss the Indictment for Post-Indictment Delay. After fully reviewing the evidence and the parties' arguments, the Court makes the following findings of fact and conclusions of law. Any finding of fact that constitutes a conclusion of law is hereby adopted as a conclusion of law, and any conclusion of law that constitutes a finding of fact is hereby adopted as a finding of fact.

1. On November 29, 2006, defendant Arnulfo Araiza ("defendant") was charged in a single-count indictment with making a false statement in a passport application in violation of 18 U.S.C. § 1542.

2. On or about January 11, 2006, defendant submitted a passport application under penalty of perjury at a United States Post Office in Bellflower, California. Defendant submitted the Passport Application under the name "Agustin Jesus Rodriguez."

3.     In the passport application, defendant further indicated that: (a) his date of birth was September 26, 1982; (b) he was born in Torrance, California; (c) his social security number was a number ending in 8626; and (d) that he had never used another name. (Id.)  In fact, defendant's true name is Arnulfo Araiza.

4.     Defendant was born in Mexico on or about October 31, 1984, and defendant is not a United States Citizen.

5.     On November 29, 2006, a federal grand jury returned an indictment charging defendant with making a false statement in a passport application in violation of 15 U.S.C. § 1542.  On November 29, 2006, an arrest warrant was issued for defendant.

6.     On December 10, 2006, agents from the Los Angeles Field Office ("LAFO") of Diplomatic Security Service ("DSS") attempted to serve defendant with the arrest warrant at his last known address.  Defendant's sister, his sister's husband or boyfriend, and several children were present at the residence.  The DSS agents informed the individuals who were present that there was a warrant for defendant's arrest, after which they searched the residence and determined that defendant was not present.

7.     On December 20, 2006, a press release was issued by the United States Attorney's Office.  The press release stated that, "Mexican citizen Arnulfo Araiza was indicted in late November for allegedly applying for a passport in the identity of a deceased U.S. citizen.  Araiza, 24, of Long Beach, is a fugitive being sought by authorities."  On December 21, 2006, Defendant's arrest warrant was entered into government databases.

8.     In April 2007, Special Agent Karen Riley updated defendant's arrest warrant by checking law enforcement databases; updated his criminal history; checked California Department of Motor Vehicle Records ("DMV") and commercial databases, such as LexisNexis Accurint and Thomson-Reuters CLEAR.

9.     On February 26, 2008, Customs and Border Patrol ("CBP") in San Diego came into contact with defendant at the San Diego port of entry as defendant was attempting to enter the United States.  Although CBP officials contacted Special Agent Riley to notify her that they had defendant, the call failed due to poor cellular telephone reception.  Special

Agent Riley was unable to reconnect with the Border Patrol officials, and defendant was released several hours later. Defendant voluntarily returned to Mexico.

10. For the next several years, agents continued to perform database checks in search of the defendant. In April 2011, DSS updated the defendant's arrest warrant by performing a records check on defendant's criminal history and driver's license information in order to validate his arrest warrant. In April 2014, DSS again updated or validated the defendant's arrest warrant by performing several records checks on various government and commercial databases.

11. In October 2014, agents ran a facial recognition check using defendant's passport picture that resulted in zero matches; the agents concluded that defendant had not applied for another U.S. passport in either of his known identities or in another identity. That same month, DSS ran additional commercial record checks using defendant's name and the social security number ending in 8626. These checks did not yield any new information on defendant's whereabouts.

12. In December 2014, an agent ran an updated criminal history check on defendant which showed no new arrests or detention activity. The agent also made inquiries about defendant with the California DMV and found that defendant had not applied for a new driver's license using his known identities.

13. Several months later, on April 3, 2015, defendant was arrested by the Los Angeles Police Department ("LAPD") on a charge of driving under the influence. During the warrant validation process, DSS determined that defendant had been arrested. On April 29, 2015, DSS special agents subsequently arrested defendant pursuant to the arrest warrant issued in his case. Defendant's common law wife was present at defendant's arrest and informed DSS Special Agents that she and defendant have lived in Wilmington, California for a while, and that they have moved often.

14. Between his indictment in 2006 and his arrest in 2015, defendant was a fugitive. Between 2006 and 2008, defendant was living in Mexico, and between 2008 and 2015, defendant was living in the United States after illegally reentering the United States.

The Court finds that the defendant was living in the United States illegally during this period, likely knew of the arrest warrant, and was purposely avoiding apprehension by living under the radar (failing to update his driver's license or social security number, i.e., avoiding a digital footprint that might lead to his arrest) and constantly changing his residence despite law enforcement's good faith efforts to locate him.

15. On June 22, 2015, defendant filed a motion to dismiss the indictment for post-indictment delay pursuant to the Sixth Amendment to the United States Constitution and Rule 8(b) of the Federal Rules of Criminal Procedure ("Rule 48(b)").

16. Prior to filing his motion to dismiss the indictment, defendant filed two stipulations to continue his trial. This motion followed after the Court denied his second stipulation to continue the trial.

## CONCLUSIONS OF LAW

1. The Sixth Amendment to the Constitution of the United States guarantees a defendant's right to a speedy trial in all criminal prosecutions. In United States v. Barker, the Supreme Court established a four-factor "balancing test, in which the conduct of both the prosecution and the defendant are weighed," when assessing whether a defendant's right to a speedy trial has been violated. 407 U.S. 514, 530 (1972). In determining whether a defendant's right to a speedy trial has been infringed, a court must assess (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. Id. None of the four factors is either "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." Id. at 533. "Rather, they are related factors and must be considered together with such other circumstances as may be relevant."

2. For speedy trial claims, the length of delay is measured from the time of the indictment to the time of the trial. United States v. Gregory, 322 F.3d 1157, 1160 (9th Cir. 2003). "The length of the delay is to some extent a triggering mechanism." Barker, 407 U.S. at 530. If the delay is sufficiently lengthy, then it warrants "inquiry into the other factors that go into the balance." Id.

3.     Generally, a post-indictment delay of one year is "presumptively prejudicial." Doggett v. United States, 505 U.S. 647, 652 n.1 (1992) (delay of more than one year generally presumptively prejudicial and sufficient to trigger Barker inquiry).  On its face, the length of delay from indictment to the commencement of the currently scheduled trial date is approximately eight and a half years, which is sufficient to trigger further inquiry into the remaining three Barker factors.  See United States v. Corona-Verbera, 509 F.3d 1105, 1114 (9th Cir. 2007) (holding that "nearly eight-year delay between indictment and arrest is presumptively prejudicial and sufficient to trigger inquiry into the other three factors").

4.     The second Barker factor that courts must consider is the reason for the delay, in particular, whether the government or the defendant bears principal responsibility for the delay.  See United States v. Sandoval, 990 F.2d 481, 483-85 (9th Cir. 1993).  In this case, the Court finds that the defendant, and not the government, bears the principal responsibility for the delay.

5.     After filing the indictment in 2006, the government took diligent steps to locate the defendant by attempting to execute the arrest warrant, and by releasing a press release identifying defendant by name, noting that he had been charged with a crime, and that he was a fugitive. The government also placed defendant's arrest warrant into the NCIC database where other federal, state, or local law enforcement agencies would see it if they encountered defendant.

6.     The government also notified the defendant's sister that he had been indicted and that there was arrest warrant for his arrest.  And, although the government was advised that the defendant had moved to Mexico, it was given no contact information or firm location for the defendant.  In addition, there is no evidence that the defendant or anyone on his behalf contacted the government at any time prior to his arrest.

7.     Defendant relies on Doggett and United States v. Mendoza, 530 F.3d 758, 768 (9th Cir. 2008) to assert that there was no justifiable reason for delay.  First, Doggett does not define the duty of care the government owes. 505 U.S. at 652-53.  Where the

government has been diligent, the government need not undertake heroic efforts to apprehend a defendant who is purposefully avoiding apprehension. Sandoval, 990 F.2d 481.

8. Second, in Mendoza, defendant presented evidence that the government had the contact information for his family members in the Philippines. The record in Mendoza was silent as to any efforts by the government to apprehend beyond entering the arrest warrant in the law enforcement database. Here, however, the government did not have defendant's contact information, nor has defendant proffered any evidence suggesting otherwise. Instead, the defendant illegally re-entered the United States and was living illegally in the United States as a fugitive.

9. Where a defendant knew of the pending charges "years before he was arrested" but failed to assert his speedy trial right, the third Barker factor weighs "heavily" against him. Doggett, 505 U.S. at 653. Here, the defendant's sister knew that law enforcement authorities were seeking his arrest because they arrived at his former residence and informed her. Thus, this factor weighs against defendant. The defendant has submitted no evidence that he did not know that there was outstanding warrant for his arrest.

10. Actual prejudice is typically demonstrated in three ways: "oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the [accused's] defense will be impaired." Gregory, (citing Doggett, 505 U.S. at 654). The prejudice with which we are concerned is prejudice caused by the delay that triggered the Barker inquiry, not simply any prejudice that may have occurred before the trial date but unrelated to the fact of the delay itself. Id. at 1163.

11. The degree of prejudice that a defendant must show is viewed on a sliding scale based on the government's diligence in pursuing him. If the government has pursued a fugitive defendant "with reasonable diligence from his indictment to his arrest, [then] his speedy claim would fail" absent a showing of actual prejudice. Corona-Verbera, 509 F.3d at 1116 (quoting Doggett, 505 U.S. at 656). By the same token, a defendant who bears responsibility for the delay is not entitled to a presumption of prejudice and, instead, "carries a heavy burden of demonstrating actual prejudice to succeed on a speedy trial claim."

1  United States v. Sutcliffe, 505 F.3d 944, 957 (9th Cir. 2007) (citation omitted). But where
2  the government has been negligent in those efforts, the weight assigned to a defendant's
3  presumption of prejudice increases depending on the length of the delay caused by the
4  government's negligence. See Doggett, 505 U.S. at 657. Thus, a court's "toleration of such
5  negligence varies inversely with its protractedness." Id. ("to warrant granting relief,
6  negligence unaccompanied by particularized trial prejudice must have lasted longer than
7  negligence demonstrably causing such prejudice").

8        12.    Because the Court finds that the government was diligent, there is no
9  presumption of prejudice. The defendant has failed to carry his "heavy burden" of showing
10 actual prejudice. See Corona-Verbera, 509 F.3d at 1113, 1116 ("generalized speculations"
11 insufficient where defendant offered neither "affidavits nor any non-speculative proof as to
12 how he was prejudiced" by delay). In short, defendant has not alleged with particularity
13 how the delay impairs his case other than to suggest that he has lost the ability to question
14 government agent witnesses.

15       13.    As the Supreme Court has recognized, albeit in the pre-indictment delay
16 context, "the applicable statute of limitations . . . is . . . the primary guarantee against
17 bringing overly stale criminal charges." United States v. Marion, 404 U.S. 307, 322 (1971).
18 Statutes of limitations "provide predictability by specifying a limit beyond which there is an
19 irrebutable presumption that a defendant's right to a fair trial would be prejudiced." Id.
20 Here, defendant submitted a fraudulent passport application in January 2006, and as a result,
21 defendant was charged with one-count of violating 18 U.S.C. § 1542. Significantly, the
22 statute of limitations for offenses falling within 18 U.S.C. § 1542 is ten years. See 18 U.S.C.
23 § 3291. Because there is a ten-year statute of limitations on such offenses, the statute of
24 limitations will not expire until January 2016. Under these circumstances, defendant has not
25 established that he has suffered prejudice.

26       14.    Rule 48(b) of the Federal Rules of Criminal Procedure allows a court to
27 dismiss an indictment if unnecessary delay occurs in bringing a defendant to trial where
28 there is a showing of prejudice. Fed. R. Crim. P. 48. But, here there has been no showing of

-7-

actual prejudice.  See United States v. Casas, 356 F.3d 104, 112-13 (1st Cir. 2004) (delay of over five years from indictment to arraignment did not violate defendant's speedy trial rights or Rule 48 where the government did not know the defendant's location during that period, no prejudice was shown, and the prosecution acted quickly once it discovered the defendant's whereabouts).

15. Here, the government did not know where defendant was located between 2006 to the date of his arrest.  Moreover, once DSS determined where defendant was located, DSS acted expeditiously to locate and arrest him.

16. Given the nature and gravity of the offense, the government's lack of knowledge of the defendant's whereabouts in Mexico, the government's reasonable and diligent efforts to update its databases, the press release that the defendant was charged with a crime and was a fugitive, the notification provided to the defendant's family that the defendant was wanted and that there was an arrest warrant for his arrest, the defendant's constantly changing his residence while living illegally in the United States, Court finds that the defendant bears the principal responsibility for the delay and that there has been no showing of actual prejudice.  Accordingly, the defendant's motion to dismiss the indictment is denied.

DATED:  November 9, 2015

_____
Percy Anderson
UNITED STATES DISTRICT JUDGE